UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA,

-against-

RAVINDRA RAMNARINE,

Defendant.
---------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
24-CR-379 (JMA)

**AZRACK, United States District Judge:**

Defendant Ravindra Ramnarine is charged in a twelve-count superseding indictment with:

- Three counts of Sexual Exploitation of a Child, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 3351 et seq.;
- One count of Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. §§ 2251(e) and 3351 et seq.;
- Four counts of Transmission of Threats with Intent to Extort, in violation of 18 U.S.C. §§ 875(d) and 3351 et seq.;
- Two counts of Coercion and Enticement, in violation of 18 U.S.C. §§ 2242(b) and 3551 et seq.;
- One count of Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2), 2252(b)(1), and 3551 et seq.; and
- One count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2), and 3551 et seq.

(Superseding Indictment, ECF No. 34.)

Before the Court is Ramnarine's motion to suppress evidence obtained during the government's warrant-based search of 955 Ascan Street, Valley Stream, New York (the "Residence") on August 8, 2024. (ECF No. 44 ("Mot.").)[1] For the reasons set forth below, Ramnarine's motion to suppress evidence is DENIED.

---

[1] Ramnarine originally filed this motion as part of an omnibus motion to suppress statements and evidence and for a Franks hearing. (ECF No. 44 ("Mot.").) Additionally, Ramnarine filed a motion to sever counts on April 8, 2026, (ECF No. 48), and a motion to compel Brady/Giglio materials on November 3, 2025, (ECF No. 36). The government filed an opposition brief addressing all three motions on August 7, 2026. (ECF No. 58 ("Opp.").) Ramnarine filed a reply brief concerning all three motions on September 5, 2026. (ECF No. 60 ("Reply").)

## I. BACKGROUND

Ramnarine was first indicted on September 24, 2024, (ECF No. 8), and a grand jury in this district returned a Superseding Indictment on October 28, 2025, (ECF No. 34). The material facts relevant to the instant motion are described below.

### A. The Search Warrant Application

On August 1, 2024, Federal Bureau of Investigation ("FBI") Special Agent Michael Devine submitted a sworn affidavit in support of an application for a search warrant pertaining to the Residence. (ECF No. 58-1, 1–28 (the "Devine Affidavit" or "SW Aff.").) As set out in detail below, the Devine Affidavit describes numerous instances of online cyberstalking and sextortion targeted at two of Ramnarine's female cousins, referred to in the affidavit and throughout this opinion as "Victim A" and "Victim B" or, collectively, as "the Victims." It also describes records that link this online conduct to Ramnarine and the Residence.

#### 1. 2020 Snapchat Messages

On November 30, 2022—when Victim A was 24 years old and Victim B was 18 years old—the Victims reported to the FBI that they had been harassed by an unknown individual since approximately 2020. (Id. ¶¶ 5–6.) The FBI reviewed screenshots that the Victims had provided to the Berwyn Police Department in 2020. The screenshots showed that a Snapchat account with the display name "John Smith" sent Victim B a close-up image of Victim B's vagina being touched by Victim B's fingers with the caption, "Love this." (Id. ¶ 9.) The screenshots also showed that, around the same time, the same Snapchat account sent threatening messages to the Victims stating,

---

At a status conference held on September 24, 2026, the Court orally denied Ramnarine's motion for a Franks hearing, his motion to sever counts, and his motion to compel Brady/Giglio materials, for reasons stated on the record at the conference. (See ECF No. 63.) In a letter dated September 28, 2026, the Government informed the Court that it does not plan to introduce, during its case in chief, any of the post-arrest statements addressed in Ramnarine's omnibus motion to suppress. (See ECF No. 64.) Ramnarine's motion to suppress statements is therefore moot. Accordingly, all that remains for the Court to decide is Ramnarine's motion to suppress evidence obtained during the warrant-based search of the Residence.

inter alia, "I'll give it a couple hours before a out [sic] 50 people see them;" "All you had to do was send some pics. But now you fucked yourself over;" and "I wonder how long before the entire school sees them." (Id. ¶¶ 8–9.) The FBI obtained records from Snapchat indicating that an account registered using the email address "hackerspro654@gmail.com" used a display name of "John Smith." (Id. ¶ 10.) The FBI also obtained records from Google indicating that, on or around September 2, 2021, a credit card registered to Ramnarine was added to the "hackerspro654@gmail.com" Google account.

**2. 2024 VOIP Messages**

From approximately February 2024 to July 2024, harassing, cyberstalking, and sextortion-related messages targeted at the Victims were sent from ten different voice over internet protocol ("VOIP") phone numbers. (Id. ¶¶ 12–22.) Seven of these VOIP numbers were administered by Google Voice and three were administered by Pinger. (Id. ¶ 12.)

VOIP Number 1, ending in -9418, is registered with Google using the name "Jack Dawson," the email address "vpnhacker963@gmail.com," and a Verizon IP address registered to Ramnarine at the Residence (the "Verizon IP address"). (Id. ¶ 13.) On or about July 11, 2024, this number texted Victim A an image of Victim A topless and another of Victim A posing in front of a mirror in her underwear.

VOIP Number 2, ending in -5732, is registered with Google using the email address "vpnhackers987@gmail.com" and Verizon IP address. (Id. ¶ 14.) On or about May 29, 2024, this number texted Victim A: "Hey [Victim A's name]. Remember me?" followed by an image of Victim A topless and the message, "I remember you." (Id.) On or about July 13, 2024, the number texted Victim A, "Whore," "You don't get to block," and "Hello." (Id.)

VOIP Number 3, ending in -1370, is registered with Google using the email address "w2w0e5@gmail.com," which, according to Google records, is the recovery email for

"vpnhackers987@gmail.com." (Id. ¶ 15.) On or about February 23, 2024, this number texted Victim A, "Would love to subscribe. Your content is hot!" and "[Victim A's name], right?" (Id.) On or about July 13, 2024, VOIP Number 3 texted Victim A, "Whore." (Id.) On or about July 17, 2024, VOIP Number 3 texted Victim B, "Who should I send them too [sic]," and "Maybe directly to your brother and dad." (Id.)

VOIP Number 4, ending in -0565, is registered with Google using the name "Danny Dawson" and the email address "jackdawson0205@gmail.com." (Id. ¶ 16.) IP address records show that the user of this email connected to the internet from the Verizon IP address at the Residence on or about July 17, 2024. On or about July 17, 2024, VOIP Number 4 texted Victim A, "Gues who elses [sic] I have?" and "[Victim B's name] is next." (Id.)

VOIP Number 5, ending in -2670, is registered with Google using the email address "vpnhackers953@gmail.com" and the name "Hush Hush." (Id. ¶ 17.) On or around February 26, 2024, this number texted Victim A, "Hey [Victim A's name], How've you been girl?" (Id.)

VOIP Number 6, ending in -9185, is registered with Google using the name "Danny Dawson" and the email address "jackdawson0205@gmail.com." (Id. ¶ 18.) VOIP Number 7, ending in -7796, is registered with Google using the name "Jack Dawson" and the email address "vpnhackers963@gmail.com." (Id.) IP address records show that the user of VOIP Number 6 and VOIP Number 7 both connected to the internet from the Verizon IP address at the Residence on or about July 13, 2024. (Id.)

Between February 2024 and July of 2024, the Victims received multiple telephone calls from VOIP Numbers 1–7. (Id.)

VOIP Number 8, ending in -0395, is registered with Pinger using the name "Jack Dawson" and the email address "vpnhackers963@gmail.com." (Id. ¶ 20.) The user connected to the internet from the Verizon IP address at the Residence on or about July 11, 2024. (Id.) On or about July

11, 2024, VOIP Number 8 texted Victim A, "Hi is this [Victim A's name]? I wanted to lyk I found a lot of leaked pics and vids of u online and also this number if u wanted to take it down," and texted Victim B, "Hi is this [Victim B's name]? Random but I found your nudes leaked on a website with your number and name so I wanted to lyk in cause u wanted to get them taken down. I also some of a girl that looks like u so I'm not sure if your related. She didn't answer yet but let her know too." (Id.) That same day, the number also texted Victim A:

> Yeah I just looked it up. Missed u [Victim A's First Name]. I still have the nudes on u and ur sis. Who should I send to first? And I'll send ur sisters nudes first. Isn't ur niece almost old enough to start sending too? The cops can't do anything so ur all at my mercy. Ur little ex bf did nothing also. So I suggest u answer. Ur nudes are already online. It's to late to stop that. Ur sis on other hand, I'll start with her friends. Then the people she works with and then her school…. Answer u bumb whore. I have ur nuders [sic] andu [sic] your sisters. Do I need to get ur nieces too? Don't think ur smarter then me u dumb whore. I will rape ur little sis in the week if u don't answer.

(Id.)

VOIP Number 9, ending in -3030, is registered with Pinger using the name "[redacted] Ramnarine" and the email address [redacted]@gmail.com." (Id. ¶ 21.) IP records show that the user connected to the internet from the Verizon IP address at the Residence on or about July 13, 2024. (Id.) On or about July 13, 2024, VOIP Number 9 texted Victim A, "I suggest u answer. If you don't I'll go to [Victim B's name]. And she answer. I have receipts. Your nieve [sic] is what? 11? I'm going to fo [sic] this to her next. So make up ur mind and answer. Who suffers. No answer means it's ur niece. Ur sis bored me. So ur niece is next. You have 5 mins." (Id.) On or about July 13, 2024, VOIP Number 9 texted Victim B various messages including, inter alia:

> . . . That goes for u and ur sis. Or ur niece will feel the pain in a year or 2 or now. Depends on how I feel
>
> U know how easy the [sic] give it up now?
>
> Fucking answer?
>
> Bet [redacted] getting the nudes first

Hello?

U want to block me? Big mistake

Answer

I'm not scared of u have answering the phone

Ur dad? Ooo I'm so scared

Do u want to be raped or ur niece?

Unblock me now

Unblock now

And Answer

(Id.)

VOIP Number 10, ending in -6533, is registered with Pinger using the name "Gracen Genck" and the email address "vpnhackers963@gmail.com." (Id. ¶ 22.) IP records show that the user connected to internet from the Verizon IP address at the Residence on or about July 13, 2024. (Id.) On or about July 13, 2024, VOIP Number 10 texted Victim B:

> Hey [Victim B's name]. Here is how things will go. Ur dad is not a threat. Neither is the cops. Now I need u to do what I order or ur niece will pay. I have her nudes now. It took a while but shes a dumb age. So now I will send u, ur sis, and ur niece. Make ur choice. I want u to unblock me on everything now. Or I send to her school. Unblock me on everything now whore. Or Ur niece pays the price. [Victim B's name] right? Answer now bitch. Block me now and ur niece suffers. Ur sis has no controll [sic].

(Id.)

**3. Messages on Other Platforms**

On or about July 22, 2024, an Instagram account "Eliascarlos129" messaged Victim B, "Guess who. You told me 20 mins. Should I torture [Victim A's name] instead or just send what I have to her contacts? Did you ask abt [Unknown male name]?" (Id. ¶ 23.) Instagram records

show that this account was registered using the email address "vpnhackers987@gmail.com" from the Verizon IP address at the Residence on or about July 18, 2024. (Id.)

On or about April 16, 2024, Victim B received a notification from Snapchat that an unknown individual attempted to log in to her account from the Verizon IP address at the Residence. (Id. ¶ 24.) Victim B also received a follow request from a Snapchat user "dannyc2.25" using the display name "Jack Dawson." (Id.) Snapchat records show that this account was registered using email address "vpnhackers987@gmail.com."

**4. The Residence**

Based on a search of law enforcement databases, the Devine Affidavit identifies the Residence as a single-family dwelling and Ramnarine's residence. (Id. ¶ 26.) The Devine Affidavit identifies four of Ramnarine's relatives as possible other occupants. (Id.) On or about July 31, 2024, a law enforcement agent observed an individual matching the image of Ramnarine depicted on his license leaving the Residence at approximately 7:15 a.m. and getting into a Nissan Maxima with a license plate registered to Ramnarine. (Id. ¶ 27.)

The Devine Affidavit describes in detail the electronic devices and storage media that law enforcement agents sought permission to search for and seize from the Residence. (Id. ¶¶ 28–43.) It describes, inter alia, the utility of forensic evidence, (id. ¶ 39), the necessity of seizing or copying entire computers or storage media, (id. ¶ 40), and the necessity of seeking authority to unlock devices using biometrics, (id. ¶¶ 42–43). The Devine Affidavit also proposes ways for the search and seizure to be tailored in scope. For example, the Devine Affidavit proposes:

> To narrowly tailor the scope of any search and seizure, the applied-for warrant would allow the seizure and search of only shared computer equipment found in common areas reasonably believed to be used, possessed, or accessed by RAMNARINE and electronic devices and cellular phones: (1) found on the person of, or within reasonable proximity of RAMNARINE; (2) found within a bedroom where RAMNARINE is determined to have been sleeping; (3) attributed to RAMNARINE using biometric unlocking information described below; (4) identified by an individual within the SUBJECT PREMISES as belonging to

> RAMNARINE; or (5) which no individual in the SUBJECT PREMISES is able to identify as belonging to any specific member of the household. . . .
>
> Because at least one other adult is believed to reside at the SUBJECT PREMISES, it is possible that the SUBJECT PREMISES will contain electronic devices that are predominantly used, and perhaps owned, by a person who is not suspected of a crime. The applied-for warrant does not permit the seizure and review of electronic devices that belong solely to third parties. The applied-for warrant allows for the seizure and review of electronic devices owned by or used by RAMNARINE, further delineated in Attachment B.

(Id. ¶¶ 34–35.)

The Devine Affidavit incorporates two attachments. Attachment A, titled "Premises To Be Searched," describes the subject premises as the Residence at "955 Ascan St., Valley Stream, New York 1580, and any open or closed and locked containers and electronic devices found therein." (Id. at 26 ("Attachment A").) It also includes a description and photograph of the Residence. (Id.)

Attachment B, titled "List Of Items To Be Seized," lists categories of "evidence, instrumentalities, and contraband concerning violation of Title 18, United States Code, Sections 2422(b), 2261A, and 1030 (the 'Subject Offenses')." (Id. at 27–28 ("Attachment B").) The list includes, inter alia:

> Documents in any format and medium pertaining to the sexual exploitation of children, and to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8).

(Id. ¶ 1.) It also includes:

> Computers, phones, tablets, electronic gaming devices, media players, computer hardware, computer software, and video display monitors that, based on their location, appearance, and/or other information learned at the time of the execution of the warrant are reasonably believed to be connected to the Subject Offenses or are in the possession of Ravindra T. RAMNARINE.

(Id. ¶ 2.) It goes on to specify:

> The computer media and electronic devices to be searched shall, based on their location, appearance, and/or other information learned at the time of the execution

> of the warrant, be reasonably believed to be possessed or used by RAMNARINE or linked to the Subject Offenses.

(Id. ¶ 3.) Attachment B also authorizes the seizure of:

> Items in any format and medium depicting a relationship between RAMNARINE and the victims that pertain to the Subject Offenses.

(Id. ¶ 9.)

### B. The Search Warrant

On August 1, 2024, United States Magistrate Judge Anne Y. Shields signed a search and seizure warrant pertaining to the Residence. (ECF No. 58-1, 29–33 (the "Search Warrant").) As its description of the person or property to be searched, the Search Warrant incorporates "Attachment A" to the Devine Affidavit, described above. (Id. at 31.) As its description of the property to be seized, the Search Warrant incorporates "Attachment B" to the Devine Affidavit, described above. (Id. at 32–33)

## II. DISCUSSION

Ramnarine argues that the evidence obtained during the government's search of the Residence must be suppressed for three reasons: (1) because Devine Affidavit contains false statements and suffers from material omissions that, if cured, would undermine probable cause; (2) because the Search Warrant itself is facially overbroad and insufficiently particularized; and (3) because the agents who executed the Search Warrant performed forensic searches that exceeded the scope of the warrant's authorization.[2] As explained further below, the Court concludes that the Search Warrant was supported by ample probable cause, that it was not

[2] Ramnarine also moves to suppress the fruits of the search based on the executing agents' failure to provide an inventory of items seized during the search warrant execution as required by Federal Rule of Criminal Procedure 41. (See Reply at 36–39.) At a status conference held on November 5, 2026, the Court scheduled an evidentiary hearing on the inventory issue and reserves judgment on that issue until after the hearing has taken place.

overbroad and was appropriately particularized, and that Ramnarine has not established that the warrant's execution exceeded its authority.[3]

**A. <u>Franks v. Delaware</u>**

In Franks v. Delaware, the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. 154, 156 (1978).

In his omnibus motion, Ramnarine argues that the Devine Affidavit contains false statements and suffers from material omissions and that, if those false statements and omissions were cured, the Search Warrant would not be supported by probable cause. (Mot. at 3–11.) First, he argues that the Devine Affidavit should have included more information about the Berwyn Police Department's 2020 investigation; namely, that Berwyn officers considered the Victims not credible, noted that the photos of the Victims appeared to have originated from the Victims' own phones, and investigated an alternative suspect. (Mot. at 4–7.) Next, Ramnarine argues that the

---

[3] In its opposition brief, the Government argues that Ramnarine has not established a reasonable expectation of privacy with respect to the Residence and thus has no standing to bring the instant motion. (See Opp. at 18–19.) In so arguing, the Government seizes on the fact that Ramnarine disputed in his motion that the Residence was his primary residence. (Id.) The Government also points out that, at the time he filed the instant motion, Ramnarine had not filed an affidavit establishing his reasonable expectation of privacy in the Residence. (Id.)

In light of the Court's denial of Ramnarine's motion on other grounds, infra, the Court does not need to decide this issue and assumes arguendo that Ramnarine had a reasonable expectation of privacy in the Residence and that a warrant was required to search the Residence and to seize and search all the items at issue. Moreover, the Court notes that Ramnarine's motion does not contest that the Residence was his home. The motion merely points out, in service of the Franks argument, that the Devine Affidavit falsely represented that a law enforcement database source had identified the Valley Stream as Ramnarine's primary residence when, in fact, that database identified a different address as Ramnarine's primary residence. (Mot. at 8.) The same paragraph of the motion acknowledges that other sources identified the Valley Stream address as Ramnarine's residence. (Id.) Moreover, Ramnarine has now filed an affidavit affirming that he lived at the Valley Stream address. (ECF No. 60-1.)

Devine Affidavit falsely claimed that VOIP Number 3 and VOIP Number 5 connected to an Optimum IP address registered to Ramnarine at the Residence in February 2024, when, in fact, that Optimum account was cancelled in October 2023. (Mot. at 7–8.) Finally, Ramnarine argues that the Devine Affidavit falsely stated that law enforcement databases identified the Residence as his "primary residence" when, in fact, those records identified a different address as his primary residence. (Mot. at 8–9.)

At a status conference on September 24, 2026, the Court denied Ramnarine's motion for a Franks hearing. As the Court explained on the record at that conference, none of the omitted information about the Berwyn investigation undermines the ample evidence supporting probable cause for the Search Warrant, the vast majority of which did not derive from the Berwyn Police Department's cursory investigation, but rather from the FBI's two-year investigation, as described in detail supra. Indeed, the Berwyn Police Department's observation that the images originated from the Victims' own devices even corroborates the evidence presented in the Devine Affidavit that Ramnarine obtained the Victims' nude photographs through hacking. The Court also explained at the conference that the Devine Affidavit's statements about the Optimum IP address and the "primary residence" denotation were not necessary to the probable cause determination supporting the Search Warrant. For these reasons, the Court rejected these arguments as a basis for Ramnarine's suppression motion and his motion for a Franks hearing. In line with that analysis, the Court excised the allegedly false statements about the Optimum IP address and the "primary residence" statements from its summary of the affidavit recounted supra. The remaining facts, as set forth above, are more than sufficient to establish probable cause supporting the Search Warrant.

## B. Overbreadth and Particularity

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants

> shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "A warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." Kentucky v. King, 563 U.S. 452, 459 (2011).

"Although somewhat similar in focus, [overbreadth and particularity] are two distinct legal issues: (1) whether the items listed as 'to be seized' in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers." United States v. Hernandez, No. 09-CR-625, 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010); see also United States v. Galpin, 720 F.3d 436, 446 (2d Cir. 2013) (explaining that a warrant is unconstitutionally overbroad "if it is broader than can be justified by the probable cause upon which the warrant is based"); United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990) (explaining that the particularity requirement prevents "leav[ing] to the unguided discretion of the officers executing the warrant the decision as to what items may be seized").

The particularity requirement has three criteria. "First, a warrant must identify the specific offense for which the police have established probable cause." Galpin, 720 F.3d at 445. "Second, a warrant must describe the place to be searched." Id. at 445–46. "Third, the warrant must specify the "items to be seized by their relation to designated crimes." Id. at 446. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." In re 650 Fifth Ave. & Related Props., 830 F.3d 66, 99 (2d Cir. 2016) (quoting Maryland v. Garrison, 480 U.S. 79 (1987)).

However, "the Fourth Amendment does not require that search warrants include a perfect description of the data to be searched and seized, including search warrants for digital data." United States v. Tompkins, 118 F.4th 280, 287 (2d Cir. 2024) (cleaned up). "A warrant passes constitutional muster as to the description of the place to be searched when the description defines the search location with practical accuracy rather than absolute precision." Id. Ultimately, "[a] warrant must be 'sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize.'" United States v. Shi Yan Liu, 239 F.3d 138, 140 (2d Cir. 2000) (quoting United States v. LaChance, 788 F.2d 856, 874 (2d Cir. 1986)).

A warrant that fails to particularly describe the place to be searched and the items to be seized is invalid even if the search warrant application contained adequate descriptions and even if the search was conducted within the limits proscribed by the affidavit supporting the application. See Groh v. Ramirez, 540 U.S. 551, 557, 563 (2004). This is so because "[t]he Fourth Amendment by its terms requires particularity in the warrant itself, not in the supporting documents." Id. at 557. Accordingly, "[r]esort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it." United States v. Purcell, 967 F.3d 159, 179 (2d Cir. 2020) (quoting United States v. George, 975 F.2d 72, 76 (2d Cir. 1992)); see also In re 650 Fifth Ave., 830 F.3d at 100 ("[F]or an attached affidavit properly to be incorporated into a warrant, the warrant must contain "deliberate and unequivocal language of incorporation." (quoting United States v. Waker, 534 F.3d 168, 172–73 & n.2 (2d Cir. 2008))).

Finally, the Court notes that "[s]uppression of evidence . . . has always been [a] last resort, not [a] first impulse." United States v. Purcell, 967 F.3d 159, 179 (2d Cir. 2020) (quoting Hudson v. Michigan, 547 U.S. 586, 591, (2006)). Thus, pursuant to the so-called "good faith exception," "[t]he exclusion of evidence is inappropriate when the government acts 'in objectively reasonable reliance' on a search warrant, even when the warrant is subsequently invalidated." Id. (quoting

United States v. Ganias, 824 F.3d 199, 221 (2d Cir. 2016)). Evidence obtained pursuant to a search warrant will be excluded only where "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Leon, 468 U.S. 897, 923 n.23 (1984).

Ramnarine argues that the Search Warrant in this case was overbroad and insufficiently particular because it authorized an indiscriminate search of computers and other electronic storage devices. He argues that the Search Warrant suffered from fatal particularity defects, namely, that it contained no temporal restrictions on the files to be reviewed, no device-specific descriptions identifying items believed to contain evidence, and no "protocol limiting agents' exposure to the private information of third-party household members." (Mot. at 12–13.) The motion makes this point only fleetingly, but Ramnarine expands on it substantially in his Reply brief, presenting several new arguments. (See Reply at 22–32.)

In his Reply brief, Ramnarine primarily argues that it was unconstitutional for Attachment A to the Search Warrant to define the "Premises to be Searched" to include the Residence as well as "any . . . electronic devices found therein," because the Residence is home to several other of Ramnarine's adult family members who possess devices of their own. (Reply at 24–25; see also Attachment A.)[4] Thus, he argues, the Search Warrant improperly authorized a search of devices that had no connection to Ramnarine and for which the warrant application did not establish probable cause.

This overbreadth argument elides the fact that Attachment B to the Search Warrant delineated the "List of Items to be Seized" from the Residence to include only "[e]vidence,

---

[4] Ramnarine does not contest that Attachments A and B are properly incorporated into the warrant. (See Reply at 18–19.) As explained below, he argues that the Attachments do not sufficiently authorize the seizures and searches requested in the Devine Affidavit and performed by the executing agents—particularly the forensic examination of electronic devices—and that the Devine Affidavit was not incorporated into the Search Warrant. (Id. at 19–20, 26–27.) The Court agrees that the Devine Affidavit was not incorporated into the warrant, but this is immaterial because, as explained below, Attachments A and B to the warrant were sufficiently particularized.

instrumentalities, and contraband concerning violation of Title 18, United States Code, Sections 2422(b), 2261A, and 1030 (the 'Subject Offenses')."[5] (Attachment B.) Moreover, Attachment B limited the electronic devices to be seized to those that, "based on their location, appearance, and/or other information learned at the time of the execution of the warrant[,] are reasonably believed to be connected to the Subject Offenses or are in the possession of Ravindra T. RAMNARINE." (Id. ¶ 2.) Likewise, Attachment B limited the search of electronic devices to those "reasonably believed to be possessed or used by RAMNARINE or linked to the Subject Offenses." (Id. ¶ 3.) As such, Ramnarine's claim that Attachment A to the Search Warrant authorized the seizure or search of other household members' devices, for which there was no probable cause, is based on an incomplete reading of the warrant and is ultimately illusory.

Ramnarine also objects that Attachment B cannot supply the requisite particularity because a warrant that simultaneously authorizes the search of "all devices" (as in Attachment A) and "only Ramnarine's devices" (as in Attachment B) "leaves the reader—and the executing agent—unable to know which command controls." (Reply at 29 (citing Galpin, 720 F.3d at 445–46.).) He also argues that Attachment B inappropriately delegates discretion to the executing agents by permitting them to determine, "at the time of the execution of the warrant" whether a device is reasonably believed to belong to Ramnarine or is linked to the Subject Offenses. (Reply at 29.)

---

[5] Ramnarine takes issue with the fact that, after thus defining the "Subject Offenses," Attachment B to the Warrant authorizes the seizure of evidence pertaining to, inter alia, the "possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8)." (Reply at 30; Attachment B ¶ 1.) Ramnarine argues that § 2256(8) is the definitional provision of child pornography offenses not included in the list of Subject Offenses, and that the warrant thus authorized the seizure of evidence of uncharged offense categories. (See Reply at 30) This argument fails. The Subject Offenses defined in the warrant were coercion and enticement of a minor, 18 U.S.C. § 2422(b), stalking, id. § 2261A, and accessing a computer without authorization, id. § 1030. Although § 2256(8) is not formally a definitional provision for those statutory provisions, the definition contained therein is nevertheless useful as a descriptor of the type of evidence that could be relevant to the Subject Offenses. The facts set out in the Devine Affidavit establish probable cause to believe that Ramnarine was utilizing child pornography obtained by hacking to coerce and entice the Victims, with the goal of obtaining additional child pornography. Thus, evidence pertaining to child pornography could certainly be evidence of the Subject Offenses.

These arguments fail. Attachments A and B do not conflict. To the contrary, they work together: whereas Attachment A defines the place and devices to be searched, Attachment B restricts executing agents' authority to seize items to those items reasonably believed to contain evidence of the subject offenses. To the extent that Attachment A, read alone, could be interpreted to authorize forensic search of devices for which there was no probable cause to believe they would contain evidence of the Subject Offenses, Attachment B immediately makes clear that "[t]he computer media and electronic devices to be searched shall . . . be reasonably believed to be possessed or used by Ramnarine or linked to the Subject Offenses." (Attachment B ¶ 3.) The fact that this definition relies upon the executing agents' "reasonable belie[f]" is immaterial, as it is well established that "[o]fficials executing a warrant have some discretion . . . in interpreting the scope of the warrant." Vartholomeou v. City of New York, No. 15-CV-4996, 2018 WL 11466965, at *5 (E.D.N.Y. Jan. 2, 2018); see also United States v. Salameh, 54 F. Supp. 2d 236, 277 (S.D.N.Y. 1999), aff'd, 16 F. App'x 73 (2d Cir. 2001). Accordingly, the purported conflict between Attachments A and B does not alter the Court's determination that the Search Warrant in this case was "sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize." Shi Yan Liu, 239 F.3d at 140.

The Court also rejects Ramnarine's argument that the warrant is insufficiently particular because it lacks temporal restrictions. (See Mot. at 17–18; Reply at 31.) "[T]here is no consensus in this Circuit as to when temporal limitations are required, . . . or when the lack thereof alone may invalidate an otherwise valid search warrant." United States v. Nejad, 436 F. Supp. 3d 707, 732 (S.D.N.Y. 2020). Accordingly, "given the lack of clarity on the issue, the good faith exception would cure any deficiency that may or may not have existed." United States v. Daskal, 676 F. Supp. 3d 153, 166 (E.D.N.Y. 2023); see also United States v. Levy, 2013 WL 664712, at *11 (S.D.N.Y. Feb. 25, 2013) ("For overbreadth and particularity purposes, no controlling authority

requires a specific time frame. In these circumstances, it cannot be said that executing officers should have realized a lack of date limitation constituted a facial deficiency in the Search Warrant such that reliance on it would be unreasonable.").

For all these reasons, the Court concludes that the Search Warrant was not overbroad and did not violate the particularity requirement.

**C. Warrant Execution**

In his Reply brief, Ramnarine adds the additional argument that the FBI agents who executed the Search Warrant violated its terms because the warrant authorized at most seizure of electronic devices, not a forensic search of their contents. (See Reply at 17–22, 32–35.) He argues that, although the warrant application sought authority to search the contents of the seized devices, the Search Warrant itself never granted that authority. Thus, he contends that the FBI's forensic search of the seized devices was warrantless and that the fruits of any such search must be suppressed.

Again, this argument rests on an incomplete reading of the Search Warrant. Attachment B to the Search Warrant clearly states: "The computer media and electronic devices to be searched shall . . . be reasonably believed to be possessed or used by Ramnarine or linked to the Subject Offenses." (Attachment B ¶ 4 (emphasis added).) Ramnarine points to the fact that "Attachment B is captioned 'List of Items to be Seized'" and contends that the phrase "to be searched," when "read in a list of items 'to be seized,' . . . is at best ambiguous." (Reply at 19.) Ramnarine's argument ignores the fact that Attachment B also authorizes the seizure of "[d]ocuments in any format and medium pertaining to the sexual exploitation of children, and to the possession, receipt, or distribution of child pornography," (Attachment B ¶ 1 (emphasis added)), as well as "[i]tems in any format and medium depicting a relationship between RAMNARINE and the victims that pertain to the Subject Offenses," (id. ¶ 9 (emphasis added)). When read in its entirety, Attachment

B to the Search Warrant authorizes the seizure of electronic media, for which there was probable cause, that could be recovered only via forensic search of the seized devices.[6]

In the alternative, Ramnarine argues that, even if the Government's search of his own devices was lawful, the warrant application did not establish probable cause to search the devices of the other family members living at the Residence. (See Reply at 34.) Accordingly, he argues that the fruits of any search of those devices' contents must be suppressed.

This issue is purely hypothetical. The Court agrees that the Search Warrant authorized a forensic search only of those devices found at the Residence that were "reasonably believed to be possessed or used by Ramnarine or linked to the Subject Offenses." (Attachment B ¶ 4.) However, Ramnarine has not provided the Court with any evidence that electronic devices belonging to anyone other than himself were seized from the Residence, let alone forensically examined. In an attempt to support his contention that the Government unlawfully seized third-party devices, Ramnarine points to the fact that the Government seized numerous devices from the Residence and that "the majority of these devices, which appeared in the initial Indictment, were dropped from the Superseding Indictment entirely." (Mot. at 19.) According to Ramnarine, this is an implicit concession that the Government concluded, after reviewing these additional devices, that they "belonged to third parties." (Id.) The Court is not persuaded. The Devine Affidavit recounted Ramnarine's use of numerous phone numbers and internet accounts to harass the Victims. (See SW Aff. ¶¶ 5–24.) The fact that the FBI seized numerous devices reasonably believed to be used by Ramnarine or linked to the Subject Offenses is thus consistent with the probable cause outlined in the warrant application. And the fact that many of the seized devices are not referenced in the

[6] Ramnarine also argues that a warrant obtained by the FBI to search the contents of a device seized incident to Ramnarine's arrest on August 28, 2024 contained a much more explicit grant of authority to forensically search the device, underscoring the instant warrant's deficiencies by comparison. (See Reply at 20–21.) However, the fact that the August 1, 2024 warrant could have been even more explicit does not mean that it was deficient. As explained above, the Court concludes that the instant warrant was sufficiently clear in granting authority to forensically examine the contents of electronic devices obtained during the search of the Residence for which there was probable cause.

Superseding Indictment proves nothing about those devices' ownership or contents. Without some evidence that the Government unlawfully seized and searched third-party devices, there is nothing for the Court to suppress. If the upcoming evidentiary hearing on the inventory issue reveals that the Government intends to introduce evidence seized and searched from electronic devices for which there was no probable cause, Ramnarine is free to raise this argument in a future motion in limine.

## III. CONCLUSION

For the foregoing reasons, Ramnarine's motion to suppress evidence is DENIED.

**SO ORDERED.**

Dated: November 12, 2026
Brooklyn, New York

/s/ JMA
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE